Good morning, Your Honors. May it please the Court, my name is Francisco Ochoa from the law firm Mayor Brown, Rowan Mall. Together with my colleague, Alan Ehrenbaum, I represent the petitioners through the Court's pro bono program. Petitioners are here in the Court today. Would you help me on a question I have on this case? Sure. After things were all over with the administrative agency, if I recollect correctly, these people's lawyer was disbarred. Yes. Their claim is ineffective assistance of counsel. Yes. My problem is presuming some prejudice to them from having a lawyer who is bad enough to be disbarred. Some lawyers are disbarred because far from being ineffective, they're all too effective. They cheat, so they get disbarred. Sometimes the disbarment has to do with taking a client's money in a case, and it has nothing to do with representation in another case. Sometimes it has to do with really terrible representation in some particular case, but it doesn't mean it's bad representation in all cases. I don't understand how we can assume or make an inference from the disbarment in another case that there's prejudice to Hernandez-Marino from having that lawyer. If you look at the stipulation that this attorney, Terrence McGuire, entered into at the California State Bar before he was disbarred, that eventually led to his disbarment. The stipulation sets out the facts of numerous other cases in which he used the same kind of process to obtain clients and then essentially defraud them by not giving them the representation that they asked for. He would obtain the client through a notario, then file a frivolous asylum application on their behalf, and then when that asylum application was dismissed, as it necessarily had to be, try to get more money out of them for a cancellation of removal hearing. Those are the same kind of facts, and then not prepare them for the cancellation of removal hearing, and in some cases not even show up for the cancellation of removal hearing. All those facts are set forth in the stipulation, and those are facts that similarly apply in this case. If you look at the record, that's exactly what happened in this case. The issue in this case that you are focused on is the I.J.'s hardship ruling. Isn't that correct? That's the ultimate issue here. The ultimate issue is I.J.'s hardship ruling. The main argument, I would say, is the ineffective assistance. I understand that, but Judge Kleinfeld in his question assumed prejudice, and perhaps you could, just looking as to what the ultimate issue here is, whether there is some prejudice to your client, and as I understand the record as I've seen it so far, essentially it is largely cultural assimilation, education issues, which we see so many of that the board routinely, the I.J.'s and the board routinely denies, particularly if it's just going into Mexico. What is there to suggest that this is not an exercise in futility? I haven't seen anything to suggest that there was all that much more that would have been said that would have made the outcome different. I'd like to make a distinction first between prejudice and hardship. The standard for prejudice in a motion to reopen. I understand it is. Sure. But I just, some sense of, I'm not asking you to give away your case. I'm just trying to understand what's sort of the end line of this. The point that I was making is that all the petitioners needed to do to have a successful motion to reopen was demonstrate that they would have presented plausible arguments in support of their hardship claim. But, counsel, you haven't complied with Lozada, have you? I believe petitioners argued that they have substantially complied. Substantially complied. Yes. But you didn't comply. There's a three-prong test, and you didn't comply with all those prongs, did you? The Castillo-Perez case says that while the requirements of Lozada are generally reasonable, that they need not be rigidly enforced where their purposes are served by other means. I thought you told the bar, but you didn't tell the lawyers, so there isn't an opportunity to make a record before the agency on what the lawyers' excuses are. In Ray v. Gonzalez, this Court found that making a complaint to the State Bar was substantial compliance with Lozada. Also, in the Castillo-Perez case, the Court found that the goals of the rigid requirement of notice wasn't necessary when the attorney had demonstrated such gross misconduct in numerous other cases. In that case, the Court took judicial notice of that particular attorney's misconduct in numerous other immigration proceedings. It's a very similar situation here. Requiring petitioners to bring this up to McGuire himself would serve no purpose here. As McGuire demonstrated in his proceedings before the California State Bar, before this Court when this Court disbarred him for filing frivolous appeals, and before the Department of Justice itself, he's never contested that he is a bad attorney and that he has acted with professional misconduct in all these immigration cases. I'd like to get back to Judge Fischer's point a minute ago. If you stipulate, arguendo, that the attorney here did not do a good job, the reality is that the primary issues were raised. But even if you had a brilliant attorney, Brian Romero, the U.S. citizen in this case, has no standing. I mean, you look at Agosto v. Boyd, Ofoge v. Ashcroft, Mario v. Attorney General, three of our cases here say he has no standing. So if you had the most brilliant attorney in the world, how does Brian Romero's hardship really get you over the hurdle that you've got an unwinnable case here? If he can win this case, there are no immigration cases left where there's a U.S. citizen involved where they can't disrupt it by claiming hardship. Isn't that correct? With respect to the standing issue, the argument here is that Yolanda has, Yolanda, Brian's mother, has prudential standing to raise his rights in this action in order to get over the jurisdictional bar of Section 1253. But she stands in his shoes, right? Yes. And if his shoes, according to our jurisprudence, say that he has no standing, then she's no better placed than he is, is she? The argument, the issue with Brian is that he has constitutional rights of family unity. And it's a substantive due process issue. The question, the narrow question is whether the fact that he has a due process right to, a constitutional right to family unity entitles him to due process and entitles and prevents Congress, I guess, from stripping this court of jurisdiction to review a hardship determination. And when that hardship determination affects a constitutional right as it does in this case. Don't you agree, counsel, that the Constitution is very clear that the Congress determines what the jurisdiction of this court is. They can take it away. They can add to it. They've done that from the beginning of the Republic. Can you cite us to any authority at all that suggests that Congress is constitutionally incapable of stripping the jurisdiction of this court in this circumstance because of a hardship of an immigrant? An area, by the way, where Congress has the greatest authority of the three branches of government. In the Real ID Act itself preserved to this court the right to review constitutional claims. Constitutional claims come up all the time in immigration proceedings and the courts have always retained jurisdiction to review those claims. So you're saying, for example, in the habeas corpus situation, which also involves constitutional rights occasionally but strips us of certain rights, you're saying that because there's a constitutional claim made that that law doesn't apply, doesn't affect us? What I'm saying is that – actually, could you repeat your question? Yeah. I'm moving to a slightly different area. You've alleged that because there's a constitutional claim being made that Congress doesn't, in effect, have the right to strip this jurisdiction. And I'm using an analogy. In the case of habeas corpus, the Congress has said that under certain circumstances the right goes away. There's a one-year statute of limitations where we are stripped of jurisdiction after that point, even though there's a constitutional claim. Are you saying, for example, that because a constitutional claim is being made that the Congress has no right to do that in the habeas corpus area? I think on that issue, I think what you're getting at is that Congress has always retained the right to draw these arbitrary lines when it comes to immigration proceedings. They set the one-year limit in the – well, Zibidis is a case that's directly on point. In some – in that – in this situation, the rights that immigrants enjoy are – the distinction between the rights that immigrants enjoy and those that citizens enjoy is paramount. In this case, we're talking about Bryan's right as a U.S. citizen to due process, which is substantially different from, you know, the right that an immigrant may have to review. And we're not asking the court to overturn or to find that anybody who has a right to family unity, as long as it's a child with a right to family unity, that they can never remove somebody from this country. I guess what I'm trying to get you to wrestle with here, Counsel, is that whether you're a U.S. citizen or not, the Constitution gives the Congress the power to create or dissolve federal courts and to give or take away their jurisdiction. In this case, the legislature, in its wisdom, decided to take away jurisdiction under certain circumstances. The fact that there is a constitutional claim being made by someone purporting to act on behalf of a U.S. citizen doesn't change that, does it? I believe it does. You do think it does. And what authority are you citing for that? I would like to address this. Well, actually, I'm over time, so I don't know that I have any time for rebuttal here. But if you want to think about it more, I'll give you a 30-second rebuttal. Okay. Thank you. Thank you, Counsel. Counsel? May it please the Court, I am Anthony McCaster and represent the Attorney General in this case. Concerning the issues on case number 04, that is the separation of power issues and the due process rights of a U.S. citizen under a family unity, the government, unless it's subject to court's questions on any of those issues, would rest on its brief filed in the 04 case. We believe, as Judge Smith pointed out, that this Court's case law on both of those issues is well established and forecloses arguments in both of those areas. Let me pose to you what's on my mind here. Yes, Your Honor. The hardship looks like something that's none of our business under the law. We don't make hardship decisions. That's right, Your Honor. The hardship is purportedly the hardship of the 15-year-old boy and having his mother and sister go back to Mexico. The real hardship is when people get away with being illegal immigrants for 15 years, they put down roots in the country such that it's really wrenching to go back to Mexico for the whole family. None of our business either way. We have no jurisdiction. Am I right so far? Yes, Your Honor. On the hardship determination, that's exactly correct, Your Honor. The one handle on this case is the ineffective assistance. And the inference isn't solid, but it isn't negligible either, that this lawyer was a total phony, just took people's money and didn't do anything for them as a regular course of procedure. The BIA did not get to see the final California disbarment of the lawyer. Is there any point in sending it back to them to take a look at that? No, Your Honor. And I think for the reasons pointed out by Judge Smith during my arguments, I mean, during my opponent's arguments, in that this case really is very simple. And you don't even have to reach the ineffective assistance of counsel claim concerning whether there was prejudice or whether counsel's performance was ineffective. Really, it's the question of whether the Petitioners have ever challenged the basis of the board's decision in denying the motion to reopen in 2004. That is, that they failed to comply, failed absolutely to comply with. And I don't think there's any ---- I don't think they failed absolutely to comply with. To prong number two. They gave notice to the bar. And I think there are some cases that do say, as your adversary said, that when you give notice to the bar, an inference can be drawn that the bar would have given notice to the lawyer. So he could have said, no, no, I didn't do a terrible job. Actually, I did a great job. It was their fault. Well, that's interesting, Your Honor. If that was their argument, then it should have been briefed. It's not even ---- Lazada's not even mentioned in their opening brief to this Court, in the supplemental opening brief. It's not even contended with. They would like this Court to just blow through the ---- and I'm talking about the second requirement because the first requirement and third requirement have been met. Blow through that second requirement. Forget about the gatekeeping that this Court ---- Well, but in this case, we have looked through those issues in the past, where it is so evident that it would be a mere formality. And the Board didn't have ---- Are you suggesting that if the Board had known that this was a disbarred attorney, that they would have said, oh, gee, we're not going to address it because you haven't given notice to counsel and whatever? No, Your Honor. I think they saw the first and the third prong met. And I think as this Court has said, that second prong is very important. I think Judge Kleinfeld brought this out in the initial argument of my adversary. It gives the attorney a chance to say what was the relationship. And in this particular case, it's even more significant because Mr. ---- the attorney that they're claiming ineffective assistance of counsel against did not appear at the hearing. Another attorney did. So we don't know what the relationship was. It was his law firm, wasn't it? Well, I think you can surmise that. It's not ---- I think she does say she's associated with it or something. But whether it's ---- Let me just ---- I think we're arguing over the facts. Looking at the substance, are you so confident that the Board, if they were aware that the counsel who represented Ms. Moreno in the hardship determination has he and thereby the person associated with him arguably has been disbarred? In other words, we know, you know, the government knows, this Court knows, that there have been a fair number of really incompetent to the point of being disbarred immigration lawyers. And the record, at least as I've reviewed it, indicates that this is one of those cases confirmed by the fact that the lawyer was disbarred. Now, if the BIA were aware that that was the kind of attorney that had represented her, that that would not have had some impact on their evaluation. My ---- I can't sit here in Pasadena after the fact and decide whether they would or wouldn't. I'm just talking about common sense. Right. And so then the question is, should we not give the Board a chance to take a look at it and decide whether or not Lozado really is the basis for turning this down? And let them make that decision. Well ---- Now, just ---- Yes, Your Honor. There may be, as I indicated by my opening question to Petitioner's Counsel, is that I'm not sure this is not an exercise in futility because I'm not clear what it is on the prejudiced side of the prong. But as he argued, all they really have to show is a plausible basis for relief, and I'm not sure that's the standard that the BIA applied. So I have ---- those are sort of the two issues that are important to me. Well, I think, Your Honor, that had the Board had the second prong of Lozado, they would have done an ineffective assistance of counsel claim and a prejudiced analysis because ---- and how I know that is because the second motion to reopen that they filed, in which the Board granted and reissued the decision, complied with the second prong. And they said, based on that second prong, they got a letter from the other counsel, the second counsel, failed to file the petition for review off the denial of the motion to reopen, that he made a mistake. He failed to do that, and the Board took that into consideration and granted the motion, granted the motion on ineffective assistance of counsel on the second attorney. Yes, because he was an up-front attorney. Well, he complied with the second prong. I mean, had they even showed ---- had they showed substantial compliance in that, okay, we sent letters to Mr. McGuire, he didn't respond. We sent letters to Mrs. Herrera, she didn't respond. We sent to a last known address, we can't find him, something to show substantial compliance. I think what this Court has said in Lozado, it's true, it's not a this is the test within the four corners and if you don't meet it, you're done. But I think they applied more to the notice of the State Bar. In other words, if the Bar is ---- if the attorney has already been disbarred, then to file a complaint with the Bar Association seems to be an act of futility. The Court can understand that the third prong is met there, there's substantial compliance. But that second prong, and this Court's held is why it's so important, is because it prevents baseless claims. We just simply don't know, and the Board didn't know, and this Court doesn't know, and they don't address it in their opening brief at all, what the nature of the relationship was. I thought we did know, actually. Associate appeared, and when a letter was sent to the lawyer by the Bar, he didn't respond. If he had some excuse, you would have expected him to respond to the Bar letter. In the first motion to reopen? He had multiple Bar proceedings, and as I recall in the last one, the Bar sent him a complaint and he never sent back a response. I'm not sure if that, and I apologize, I'm not sure if that Bar complaint came before the first motion to reopen or was something that was part of the reissuing documents. I was reviewing a lot of these cases late, and I may be all mixed up on the facts, but my recollection was that the lawyer didn't respond to the Bar, so I was thinking why would he respond to the BIA? Well, I think at least the, well, I mean to the client. The client has to show, okay, I've tried to comply with the second. He didn't respond to anyone. The Bar holds his ticket. That's the most essential people to respond to. Well, you know, that's what the second attorney did. They replied to the letter of the client saying, look, you're right, I didn't file the petition for you. I have no excuse. I slipped up. Generally, I like Lozada compliance because sometimes the lawyer's response is really good. Like I told the client if he wanted me to appear at the hearing, he'd have to pay me $1,000 retainer up front, and he never came in and paid me. Right. Good response. Well, the flip side, a good response also is like the second response in this case where the attorney said, you're right, I didn't do what I was supposed to do. You know, here's my mea culpa. I followed my thought, and the Board said, okay, I'm going to grant the motion to reopen and reissue the decision. That's also another excuse. I mean, another good showing that that second prong is essential to find out what, in fact, was the relationship. And even getting beyond the ‑‑ I see my time's up, so, Your Honor, subject to the Court's questions on any of the issues we discussed, I'd be happy to answer them. Thank you, counsel. Thank you, Your Honor. Very quickly, Judge Smith, to address your point, I found my authority. In the Bowen case, the Supreme Court held that Congress's authority to restrict jurisdiction is subject to constitutional and applied that to Congress's plenary authority to control immigration proceedings. And, Judge Fischer, I'd like to address your prejudice point, if I may, very quickly. I think it's very clear that the BIA did apply a more stringent standard than necessary, or than it should have, in considering Petitioner's motion to reopen. It did not give them ‑‑ it did not apply the plausible argument standard that we've been discussing here today and had, while Petitioner's were able to present some evidence regarding Brian Romero's Spanish skills and the fact that he's never been to Mexico. There's other evidence that were they able to present regarding the lower standard of living in Mexico, adverse country conditions, disparity in educational opportunities, et cetera. Were they able to present that evidence, it would have bolstered their claim. Okay, thank you. Mr. Ochoa, I'd be interested to know your response to this. There's a case called Urbano de Malajuan, 577F2nd589. It seems to be directly on point on your issue of the fundamental right to family unity and due process arguments, but making the point that if a citizen is allowed to challenge immigration proceedings against a noncitizen family member, it would undermine the immigration laws. I mean, how could we have immigration laws in that situation? How would they be effective? Again, I would point to the distinction we're making here. In the Urbano case, the argument there was the mere fact that the citizen child had this constitutional right, that that should prevent the parents from being deported. We're not saying that there should be that kind of broad sweeping rule in every case. We're just saying that when a constitutional right is involved in this case, there needs to be some kind of due process. And that's all. It's a much more narrow argument. Thank you. Thank you, Counsel. The Court appreciates pro bono counsel in these cases. Absolutely. We do indeed. It's valuable to us as well as to the Petitioner. It's valuable to us as well as to the Petitioner. We appreciate it. Thank you. I suspect the government appreciates having good counsel to deal with, too. Yes, Your Honor. No, we actually do, Your Honor. I know you do. I wasn't being facetious. We all want better cases. Hernandez-Marino v. Gonzales is submitted. United States v. Bazell is submitted. We'll hear argument in United States v. Solt.
judges: Kleinfeld Fisher, Smith